COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Fitzpatrick
Argued at Richmond, Virginia


COMMONWEALTH OF VIRGINIA, VIRGINIA
 DEPARTMENT OF SOCIAL SERVICES,
 DIVISION OF CHILD SUPPORT ENFORCEMENT,
 ex rel., PHYLLIS S. EWING                    OPINION BY
                                      JUDGE JOHANNA L. FITZPATRICK
v.      Record No. 1480-95-2              MAY 21, 1996

FRANKLIN R. J. EWING, III


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Melvin R. Hughes, Jr., Judge

            Keith H. Warren, Special Counsel, Virginia
            Department of Social Services, Division of
            Child Support Enforcement (Betsy S. Elliott,
            Senior Special Counsel, Virginia Department
            of Social Services, Division of Child Support
            Enforcement; James S. Gilmore, III, Attorney
            General; William H. Hurd, Deputy Attorney
            General; Siran S. Faulders, Senior Assistant
            Attorney General; Craig M. Burshem, Regional
            Special Counsel, on briefs), for appellant
            Division of Child Support Enforcement.

            Jacqueline G. Epps (Morris and Morris, on
            brief), for appellant Phyllis S. Ewing on
            custody issue.

            Deanna D. Cook (Bremner & Janus, on brief),
            for appellee.


     Phyllis S. Ewing and the Virginia Department of Social

Services (collectively referred to as mother) appeal the trial

court's order denying mother an award of child support.  She

argues that the trial court erred in eliminating the child

support obligation of Franklin R. J. Ewing, III (father) after

determining that he had become voluntarily unemployed.  Father

appeals the trial court's continuation of mother's sole legal

custody of the parties' child.  For the reasons that follow, we reverse the trial court's elimination of father's child support obligation and affirm its resolution of the child custody issue.[1]

## BACKGROUND

The parties were married on September 7, 1991 and separated on February 12, 1994.  They have one child, born December 30, 1992.

Father is a licensed pharmacist, whose 1991 income was approximately $79,000.  In 1992, father entered medical school at the Medical College of Virginia, but continued to work part time as a pharmacist, earning approximately $45,000 in 1993.  After the parties separated, mother filed for an award of child support in the Juvenile and Domestic Relations District Court for the City of Richmond.  On March 15, 1994, the court entered an agreed order that required father to pay $400 per month in child support.  At the time of the entry of the support order, father was in medical school but continued to work as a pharmacist. Four months after the entry of the order, in July 1994, father quit his job as a pharmacist.  He testified that, as a third-year medical student, he would be unable to work part time and attend school full time because of the demands of his class schedule. He supports himself with student loans and loans from his parents.  Mother works as an administrative assistant at a law

---

[1]We deny father's motion to dismiss because the record fails to show that the notice of appeal was not timely filed.

2

firm, earning a monthly salary of $1875. She has a $362 monthly shortfall in her budget.

Mother was awarded sole legal custody of the parties' child, with father having visitation every other weekend and a midweek visit during those weeks with no scheduled weekend visitation. Father does not speak to mother about matters relating to the child, and he and mother have not directly communicated with one another since their separation. Father also does not speak to mother's sister, who serves as a neutral party for visitation purposes. Written notes are the only form of communication between the parties.

After a hearing on April 4, 1995, the trial court: (1) completely eliminated father's monthly child support obligation, and (2) denied father's request for joint legal custody. The trial court determined that, although father "is voluntarily unemployed now, . . . he is pursuing education that will hopefully enhance his earnings potential in the not too distant future and better secure his financial position for his good and that of his child." After calculating father's presumptive amount of child support to be zero, the trial judge refused to impute income to father and stated that he could not "find that the amount is 'unjust or inappropriate' in order to consider an alternate child support obligation due from [father]." In denying father's request for joint legal custody, the trial judge found that "communication is not occurring between the parents.

3

Communication and cooperation for the sake of the child has to be present to make joint custody work."  (Emphasis added).

## CHILD SUPPORT

Mother argues that the trial court erred in eliminating father's child support obligation.  The court specifically found that father became voluntarily unemployed when he left his job as a pharmacist to attend medical school full time.  Mother contends that, upon making this finding, the court was required to deny father's motion for a reduction in child support.[2]  We agree.

"Once a child support award has been entered, only a showing of a material change in circumstances will justify modification of the support award.  The moving party has the burden of proving a material change by a preponderance of the evidence."  Crabtree v. Crabtree, 17 Va. App. 81, 88, 435 S.E.2d 883, 888 (1993). "[A] party seeking a reduction in support payments has additional burdens:  '[H]e must make a full and clear disclosure relating to his ability to pay.  He must also show that his lack of ability to pay is not due to his own voluntary act or because of his neglect.'"  Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261 (1986) (emphasis added) (quoting Hammers v. Hammers, 216 Va. 30, 31-32, 216 S.E.2d 20, 21 (1975)).  Thus, in order to prove a material change in circumstances that justifies a

---

[2]Mother does not dispute the trial court's finding that father suffered a material change in circumstances.  She argues that father failed to meet the additional burden of proving that his material change in circumstances was not the result of his own voluntary act.

4

reduction in support, a parent "must establish that he is not 'voluntarily unemployed or voluntarily under employed.'" Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991) (quoting Code § 20-108.1(B)(3)).

In Antonelli, the Supreme Court of Virginia denied the father's request for a reduction in his child support obligation because he voluntarily quit his job as a salaried stockbroker to become a commissioned broker. 242 Va. at 156, 409 S.E.2d at 119. The Court held that, when the father "chose to pursue other employment, albeit a bona fide and reasonable business undertaking, the risk of his success at his new job was upon the father, and not upon the children." Id. at 156, 409 S.E.2d at 119-20. Thus, "the risk of reduction in income as a result of a parent's intentional act, even if done in good faith, is insufficient grounds for reducing the amount of support due under a pre-existing order." Hamel v. Hamel, 18 Va. App. 10, 13, 441 S.E.2d 221, 222 (1994) (emphasis added).

In the instant case, the trial court specifically found that father became "voluntarily unemployed" when he quit his job as a pharmacist to attend medical school full time. This finding is clearly supported by the record. When father left his job as a pharmacist without being discharged, he voluntarily terminated his employment to the detriment of his support obligation to his child. Although father's voluntary unemployment constituted a change in circumstances, he failed to prove that this change in

5

circumstances was not the result of his "voluntary act."
Additionally, father presented no change in circumstances that
might justify a reduction in support other than his unilateral
decision to quit his employment four months after the initial
amount of support was ordered.  Thus, under the rationale of
Edwards and Antonelli, the trial court should have denied
father's request for a reduction in child support.

Father argues that the record fails to show that he pursued
his medical degree in bad faith or that he quit his pharmacist
job to avoid his support obligation.  Some jurisdictions use a
good-faith analysis in determining whether a parent is entitled
to a modification of child support when he or she leaves
employment to become a full-time student.[3]  Although no Virginia

---

[3]In student obligor cases, other jurisdictions have applied a
good faith analysis.  See, e.g., In re Marriage of Seanor, 876
P.2d 44 (Colo. Ct. App. 1993), aff'd in part, rev'd in part, 891
P.2d 1002 (Colo. 1995); Sabatka v. Sabatka, 511 N.W.2d 107 (Neb.
1994); Ciostek v. Ciostek, 588 N.Y.S.2d 690 (N.Y. App. Div. 1992).
 These courts hold that "[a] parent responsible for the support of
the children may, where necessary, forego employment and pursue
further education that will enhance his earning capacity and
thereby ultimately benefit the children.  A parent may not,
however, unilaterally forego employment in an attempt to evade
support responsibilities."  Ciostek, 588 N.Y.S.2d at 691 (citation
omitted).  However, some courts using a good faith analysis in
student obligor cases have placed limitations on good faith.  For
example, although a parent is acting in good faith by pursuing
further education, this conduct cannot be "intended to deprive a
child of support and [cannot] unreasonably reduce the support
available to a child."  Seanor, 876 P.2d at 48 (emphasis added).
Additionally, other courts have recognized that good faith is only
one factor to be considered in determining whether a student
obligor is entitled to a modification of support and that "the
paramount concern and question in determining child support . . .
is the best interests of the child."  Sabatka, 511 N.W.2d at 111-
13.

6

case has addressed this issue in the context of a student obligor, Virginia courts have held that a parent's voluntary unemployment, "even if done in good faith," does not justify reducing his or her obligation to pay child support. <u>Hamel</u>, 18 Va. App. at 13, 441 S.E.2d at 222. <u>See also</u> <u>Antonelli</u>, 242 Va. at 155-56, 409 S.E.2d at 119. Additionally, "[i]n setting an award of child support, the 'primary issue before a trial judge is the welfare and best interests of the child, not the convenience or personal preference of a parent.'" <u>Brody v. Brody</u>, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993) (quoting <u>Hur v. Virginia Dep't of Social Servs. Div. of Child Support Enforcement ex rel. Klopp</u>, 13 Va. App. 54, 60, 409 S.E.2d 454, 458 (1991)).

> While a family is intact, the parents' choice of occupations and the family's standard of living are left to the parents' discretion as long as the children's basic needs are met. Once the parents are separated, however, "the law of this Commonwealth allows the courts to provide for the child's basic needs and, within reason, some measure of assumed parental generosity." After divorce, <u>although a parent may voluntarily terminate his or her employment, he or she may not do so to the detriment of support obligations to the children.</u>

<u>Brody</u>, 16 Va. App. at 651, 432 S.E.2d at 22 (emphasis added) (quoting <u>Conway v. Conway</u>, 10 Va. App. 653, 658, 395 S.E.2d 464, 467 (1990)).

Father's voluntary termination of his substantial current income to secure a possible future reward overlooks the current

7

needs of the child and gives priority to a parent's ambition. Additionally, in this case, father presented no evidence regarding how his medical school education would benefit his child or when the hoped for financial benefit would be realized. Mother's evidence established that she had a monthly shortfall in her budget of $362 and needed the court-ordered child support to adequately care for the child. The present needs of the child should not be discounted, awaiting a possible future windfall. Thus, we hold that a parent's voluntary termination of income in order to pursue a possible future gain in income is insufficient to support a modification of child support, even if done in good faith.

### CHILD CUSTODY

Father contends that the trial court erred in denying his request for joint legal custody of the parties' child and in awarding sole legal custody to mother.

> In matters of custody . . . the court's paramount concern is always the best interests of the child. . . . In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests. A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion, and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it.

Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990) (citations omitted). In this case, the trial court did

not abuse its discretion in denying father's request for joint legal custody. The evidence established the parties' lack of communication concerning the child. Mother's sister testified that she served as a neutral third party for delivery of the child for father's visitation and that communication with father was nonexistent during the exchanges. Under these facts, the trial court's determination that joint legal custody was not in the child's best interests was not plainly wrong and was supported by the evidence.

Accordingly, the decision of the trial court is affirmed as to the child custody issue and reversed as to the denial of child support.

<u>Affirmed in part and reversed in part</u>.